ASSOCIATED FLOUR HAULERS AND WAREHOUSEMEN, INC., Plaintiff, *v.* PETER J. SULLIVAN, as President of International Brotherhood of Teamsters, Local 138, a Voluntary Unincorporated Association of More Than Seven (7) Members, Defendant.

Supreme Court, Special Term, Kings County, May 19, 1938.

*Milton M. Eisenberg*, for the plaintiff.

*Rice & Maguire*, for the defendant.

MAY, J. Two motions are made herein, one by the plaintiff, an association of merchants engaged in the hauling and storage of flour, which seeks an injunction to restrain interference with its and their contract rights. The other is by the defendant, a labor union of employees of the merchants, which seeks a dismissal of the complaint on the ground that, being a labor dispute, plaintiff has failed to meet the statutory requirements governing such disputes (Civ. Prac. Act, § 876-a).

Determination of both motions resolves itself, in the main, in an answer to the question: Is there a labor dispute here involved? Superficially, of course, there is, but I am of the opinion that a careful analysis of the situation here presented does not support such a view. To dignify the practices herein attempted by such a term would be to permit such a distortion of the meaning and purposes of the statute as to encourage differences between employers and employees and make contracts between them impossible or impossible of enforcement.

The facts involved may be stated briefly. Plaintiff's members are truckmen engaged in the haulage and storage of flour. Flour is shipped from the mills or wholesalers to local jobbers or consumers, but such shipment by pre-arrangement with the customers, according to the practice in the industry, is made to the railroad terminals where, in about forty percent of the business, it is received by the trucks of plaintiff's members and delivered directly to the customers. In the other sixty per cent of the deliveries customers of the class known as flour jobbers, who receive shipments in carload lots and have insufficient facilities for storage themselves, arrange to have deliveries made to the warehouses of plaintiff's members from where the flour is ultimately delivered to such jobbers as need it. In most cases plaintiff's members have their warehouses located directly in the railroad terminals or adjacent

thereto, and the consignments of flour are by the railroad delivered and unloaded into the warehouses except in the forty per cent of the business where deliveries are made as above stated.

Plaintiff's members by contract with defendant have agreed to employ on their trucks only members of the defendant. Each truck is manned by a chauffeur and a " helper." Regular chauffeurs receive fifty-five dollars to sixty dollars a week for a five-day, forty-five hour week, and regular helpers receive from forty-seven dollars to forty-nine dollars a week. In the instances where deliveries are made from train to customer direct, the chauffeurs and helpers unload the flour from the freight car into the truck, and in the instances where deliveries are made from the warehouses they likewise load the flour into the truck. This practice has prevailed in the industry for twenty years or more. In fact, it would be difficult to conceive why the necessity for a " helper " on the truck at all, if not for such a purpose. Defendant, by a bare statement, attempts to dispute this in part, but gives no facts. Plaintiff concedes that at steamship piers, and only at steamship piers, were outside " loaders " at any time employed. I can see no issue of fact raised thereby which is material to the present situation.

Despite the foregoing, plaintiff's members were confronted last March, first by delegates of the International Longshoremen's Association and later by officers and delegates of the defendant union, with a demand that the loading from the freight cars to the trucks and from the warehouse to the trucks heretofore conducted as aforesaid, be done not by plaintiff's chauffeurs and helpers, but by members of said Longshoremen's Association and that they receive therefor the sum of three cents a hundred pounds. A barrel of flour weighs 196 pounds and such tariff accordingly would mean a charge of approximately six cents a barrel. Plaintiff's members handle the equivalent of 5,200,000 barrels of flour a year, and the annual charge on the foregoing basis, it can readily be seen, would amount to $312,000 a year or the equivalent of $12,000 a year for each of plaintiff's twenty-six members.

The fact that such charge would ultimately have to be borne by the consuming public down to the poorest and humblest, makes this exaction a particularly mean and objectionable one in my opinion.

Loading from freight car to truck involves obviously a movement of insignificant distance and moving the flour from where it is stored in the warehouse to the truck, it is stated in the moving papers and not disputed involves a distance of but from five to twenty-five feet. Chauffeurs and " helpers," who formerly handled

this work, would, under the new dispensation, stand idly by, but would still continue to receive their union wages as aforesaid.

Defendant contends that there is nothing in the contract which specifically requires the chauffeurs and helpers to " load or unload trucks." The answer to that argument is that there is nothing in such contracts to the contrary. The contract is a typical skeleton contract between employer and employee, where the details of the work to be done are purposely omitted, it being implied that the employee shall perform such work as would reasonably be expected from the nature of the employment or such as practice and custom have presented. The parties by a course of conduct over a great period of years have built up such custom and practice herein which the law will read into the contract. On the defendant's contention, it would be a palpable absurdity for plaintiff's members to employ " helpers " on their trucks at all.

I am unable to accept defendant's claim on the basis of the above that plaintiff is " seeking to have the court put something into the contract that is not already there." Proceeding from this premise, defendant asserts that there is presented no case of breach or threatened breach of contract, " but rather a dispute of the type of work to be performed by employees of the various employers in the industry." Upon defendant's basis also rests the argument that plaintiff under the contract should resort to arbitration. The contention that plaintiff as an association has no standing to bring suit is without force.

As I view it, the only issue involved is a legal one affecting the interpretation of a written contract, which on its face is unequivocal. If the defendant's contention were correct, one could immediately conceive of innumerable instances where unions, other than the one which is party to a written contract, would attempt to inject themselves upon a theory that there appears nothing in such contracts which deals specifically with the various phases of work to be performed thereunder. This in turn would compel an itemized bill of particulars of the work to be performed and perhaps of the work not to be performed to be inserted in every such contract.

Motion to dismiss the complaint is denied and motion for a temporary injunction is granted. Settle orders on notice.