Nicholas M. Pette, J.
Plaintiff, hereinafter referred to as “ Republic ” is a manufacturer of military aircraft and guided missiles, employing approximately 17,000 persons throughout its plants on Long Island, and approximately 9,500 of said employees are members of the defendant lodge, hereinafter referred to as the ‘ ‘ Union ’ ’. Republic and the Union are parties to a collective bargaining agreement dated February 19, 1955, which by its terms permitted reopening for the consideration of some of its terms. That agreement was reopened in December, 1955 for the purpose of considering changes in wages and other matters and, when agreement could not be reached, a strike ensued at the Republic plants which continued from February 19,1956 until June 9,1956, a period of 16 weeks.
This is an action by plaintiff for a permanent injunction enjoining the defendants from engaging in acts of reprisal or in any disciplinary action, in violation of an employer-union agreement which was part of the agreement settling the strike, against Union members (hereinafter referred to as nonstrikers) who crossed the Union’s picket lines and returned to work during the strike. More particularly, plaintiff seeks to restrain defendants from serving said nonstrikers with notices of charges unbecoming a Union member for crossing the Union’s picket lines during the strike, and from conducting Union trials on such charges. In effect, Republic seeks specific performance of a “ no-reprisal ’ ’ agreement.
The gravamen of plaintiff’s complaint is that the defendants, by serving many nonstrikers, and expressing their intention to serve all the nonstrikers, some 2,838 individuals, with notices of said charges and notices to appear for trial thereon *786 before the Union, violated said ' ‘ no-reprisal ’ ’ agreement, and that said breach resulted in the creation, continuation and aggravation of discord, friction and tension between the strikers and nonstrikers; impaired the morale of all such employees, prevented them from working in a harmonious, cooperative and productive manner, and will disrupt the existing relationship between plaintiff, the Union and all of plaintiff’s employees; that such discord, friction, tension and impairment of morale have adversely affected, obstructed and hindered plaintiff’s manufacture and production of aircraft and disrupted the performance of the plaintiff’s contracts, and have injured and impaired the value of its good will and caused great and irreparable damage to plaintiff, which it is impossible to estimate or determine; that the damage and injury complained of are continuing and defendants are doing and are about to commit other acts in furtherance of the breach of the “ no-reprisal ” agreement; that unless defendants are restrained by order of this court from committing the acts complained of and from interfering with plaintiff’s business, their acts will cause irreparable loss, injury and damage to plaintiff, which will be impossible of ascertainment and for which there is no adequate remedy at law; that greater injury will be inflicted upon the plaintiff by the denial of the injunction than will be inflicted upon the defendants by the granting thereof; that plaintiff has duly complied with all the obligations imposed by law and has made every reasonable effort, both orally and in writing, to settle by negotiation with representatives of the Union the dispute between the parties which has arisen by virtue of the breach of the ‘ ‘ no-reprisal ’ ’ agreement.
Defendants, by their answer, in substance, admit the execution of the collective bargaining agreement dated February 19, 1955, the reopening thereof, and after unsuccessful negotiations to reach an agreement, a strike ensued lasting from February 19, 1956, until June 9, 1956, during which large numbers of Union members crossed the Union’s picket lines and worked for Republic. Defendants further admit that on June 7, 1956, plaintiff and the Union executed a strike settling agreement, which is part of the Exhibit A annexed to and made a part of the complaint, and also admit that the “ no-reprisal ” letter agreement dated June 7, 1956 is part of said Exhibit A; they admit charges were filed on or about August 22, 1956 against a number of nonstrikers for crossing its picket lines during the strike, and that Justin Ostrow, the Union president, processed said charges and that notices of trial thereon were sent to said nonstrikers, and that the Union intends to process *787 and bring to trial other nonstrikers who had crossed the picket lines during the strike at Republic.
Defendants, however, deny said “no-reprisal” letter agreement is binding upon the Union, and deny that it is part of the strike settlement agreement; they also deny that filing said charges and serving notices thereof and of trial thereon, violate said “ no-reprisal ” agreement; they also deny that said alleged breach has caused or will cause irreparable damage to plaintiff, and deny the other material allegations of the complaint.
Republic and the Union in conjunction with the strike settlement agreement, inter alia, provided in said “no-reprisal” agreement, as follows:
‘ ‘ This is to confirm our understanding with respect to the following in conjunction with the strike settlement agreement. The effectiveness of this understanding is contingent on the ratification of the strike settlement agreement as provided for in that agreement.
‘ ‘ 1. The Company and the Union, its officers, agents, and members, agree not to engage in any acts of reprisal or any disciplinary action against any employee for any acts or conduct engaged in during the strike. In the event any employee has been or may hereafter be convicted in any criminal case arising out of activity in connection with the strike, it shall not be ground for disciplinary action ’ ’.
The defendants have also interposed eight separate and distinct defenses to the complaint, which in substance are: (1) plaintiff has not exhausted the remedies provided in the agreement dated February 19, 1955; (2) it has failed to invoke arbitration proceedings provided by said agreement; (3) this action involves á labor dispute and plaintiff has not complied with section 876-a of the Civil Practice Act; (4) plaintiff by this suit seeks to interfere in the Union’s internal affairs, is not acting in good faith but for ulterior motives and does not come into equity with clean hands; (5) that this action is an unfair labor practice as defined by subdivision (a) of section 8 of the Labor Management Relations Act, 1947 (U. S. Code, tit. 29, § 158, subd. [a]) and this court lacks jurisdiction of the subject matter; (6) plaintiff is not the real party in interest under section 210 of the Civil Practice Act; (7) plaintiff has failed to comply with section 13 of the General Associations Law in that there is no allegation .that the filing of charges by individual Union members or the processing by defendant’s president or trial committee of said charges for trial, were approved or ratified by the membership of the Union; and (8) that the venue of the action is improper.
*788 At the close of plaintiff’s case, defendants were permitted to reserve their motion, and allowed to call their sole witness out of turn, an expert who testified as to his opinion, the impact, the serving of notices of charges and trial upon the nonstrikers had upon the employees; how it affected their morale, harmony, cooperation in their work, and production. At the conclusion of his testimony, defendants rested, and then made the motion they had reserved, embracing 11 grounds, which are substantially the same as were embodied in the eight defenses contained in their answer. Decision was reserved thereon, and then plaintiff moved for judgment as prayed for in the complaint, on which decision was also reserved. In stating the 11 grounds for dismissal, defendants’ learned counsel interjected extended arguments as to most of said grounds. Said arguments, of course, are not evidence, and the court has not treated them as such.
This has been a protracted trial. The prolix testimony and the numerous exhibits in evidence are voluminous. The issues however, simply stated are: (a) is a labor dispute within the purview of section 876-a of the Civil Practice Act involved in this action?; (b) is plaintiff engaging in an unfair labor practice as defined by subdivision (a) of section 8 of the Labor Management Relations Act, 1947, known as the Taft-Hartley Act (U. S. Code, tit. 29, § 158, subd. [a]), by bringing this suit?; (c) has this court jurisdiction of the subject matter of this action?; (d) is the agreement upon which plaintiff relies, valid and binding upon the Union?; (e) is that agreement ambiguous and so indeterminate as to require other documents and parol evidence, for its proper interpretation and construction?; (f) has said agreement been breached by the acts of defendants in sending notices of charges and of trial to said nonstrikers for crossing the Union’s picket lines during the strike at Republic?; (g) has plaintiff suffered or will it suffer irreparable injury by reason of said breach of the ‘ ‘ no-reprisal ’ ’ agreement, unless defendants are enjoined?; (h) will greater injury be inflicted upon plaintiff by the denial of the relief sought than will be inflicted upon the defendants by the granting thereof?; (i) has plaintiff fully complied with the terms of the strike settlement and “ no-reprisal ” agreements?; (j) has plaintiff an adequate remedy at law? Those are the material issues in this case.
This case has been very skillfully presented by eminent counsel for both sides, and in considering and deciding the issues here involved the court has been materially aided by the scholarly and erudite memorandums submitted by both sides. *789 In commending counsel for the enlightenment it has derived therefrom, the court notes that its task has been made less arduous by reason thereof.
Upon all the facts in this case, the court finds and is of the opinion that no labor dispute is involved and that consequently section 876-a of the Civil Practice Act has no application. Where the controversy relates to the proper interpretation, binding effect of, or duty to abide by, an existing contract between an employer and a labor union, that section cannot apply. (Farrand Optical Co. v. Local 475, Int. Union of Elec. Workers, Radio & Mach., 143 F. Supp. 527; Steward Stamping Corp. v. Uprichard, 133 N. Y. S. 2d 579, affd. 284 App. Div. 902; Dalzell Towing Co. v. United, Marine Division, I. L. A. Local 333, 279 App. Div. 212; Associated Flour Haulers & Warehousemen v. Sullivan, 168 Misc. 315.)
That the complaint contains allegations required in a case involving a labor dispute under section 876-a of the Civil Practice Act, but which are unnecessary in a complaint for an injunction where no labor dispute is involved, as in the case at bar, does not render the complaint defective nor bring the action within the purview of that section, and said allegations must be treated as surplusage which do not affect the sufficiency of the complaint.
Defendants’ contention that by this suit, plaintiff seeks to interfere in the internal affairs of the Union, and that it was not brought in good faith but for ulterior motives, and plaintiff does not come into equity with clean hands, is specious and without merit. As is obvious from the complaint and the evidence adduced before this court, the purpose of this action is simply to obtain specific performance of the Union’s contractual obligation to refrain from engaging “ in any acts of reprisal or any disciplinary action against any employee for any acts or conduct engaged in during the strike.” A permanent injunction was granted in the case of Southern California Gas Co. v. Local 132 Utility Workers of America, et al. (Super. Ct. Cal., Los Angeles County, May, 1953) where a union unsuccessfully contested an employer’s application for an injunction against the union’s breach of a “no-reprisal” agreement. Where, as here, plaintiff shows a right to an injunction, it is immaterial that it is seeking it for other purposes than the assertion and enforcement of the “no-reprisal” agreement on which it relies. Furthermore, ‘ ‘ The Courts favor relief which prevents a wrong in preference to that which may afford redress ” (Belmont Quadrangle Drilling Corp. v. Galek, 137 Misc. 637, 641; Green Is. Ice Co. v. *790 Norton, 105 App. Div. 331). In numerous instances contractual rights conferred upon employers by unions have been enforced despite claims that their enforcement would conflict with the internal rules, policies or administration of the unions'. (Junkins v. Local Union No. 6313 Communication Workers of America, 241 Mo. App. 1029; Local No. 4 of Nat. Organization of Masters, Mates & Pilots v. Brown, 258 Ala. 18; Matter of Shell Oil Co. & Oil Workers Int. Union, 14 LAB. ARB. 143; Matter of Atlantic & Gulf Coast Shippers, 14 LAB. ARB. 238.)
The bringing of this suit by plaintiff is not an unfair labor practice, and this court has jurisdiction over the subject matter. (Labor Management Relations Act, 1947, § 8, subd. [a], U. S; Code, tit. 29, § 158, subd. [a]; see Case No. 857 decided by N. L. R. B. General Counsel in 1953-1954 Labor Law Reporter, Transfer Binder, par. 13,000; also fn. pp. 443-444 by Mr. Justice Frankfurter in Employees v. Westinghouse Corp., 348 U. S. 437; Independent Petroleum Workers v. Esso Std. Oil Co., 235 F. 2d 401.)
The contention that plaintiff has not exhausted the remedies provided by the grievance, disciplinary and arbitration procedures available to it under the Union’s by-laws and constitution, is untenable and cannot avail defendants in this action. They are estopped from questioning the enforcibility of the “no-reprisal” agreement on such premise. As accredited representatives of the Union defendants have accepted and retained the benefits of the settlement and “no-reprisal” agreements of June 7, 1956, and cannot now evade fulfillment of their part of the bargain by resort to the Union by-laws and constitution. (Svenska Taendsticks Fabrik Aktiebolaget v. Bankers Trust Co., 268 N. Y. 73, 81; Petcheff v. Christo Petcheff, S. A., 129 N. Y. S. 2d 677, 689, affd. 286 App. Div. 1099.) Plaintiff having irreparably changed its position to defendants’ benefit, it is plain that it would be inequitable and contrary to good conscience and honest dealing to condone defendants’ breach of the no-reprisal agreement. (Simadiris v. Hotel Waldorf Astoria Corp., 144 N. Y. S. 2d 136; Metropolitan Life Ins. Co. v. Childs Co., 230 N. Y. 285, 292; Rothschild v. Title Guar. & Trust Co., 204 N. Y. 458, 461; New York Rubber Co. v. Rothery, 107 N. Y. 310, 315, 316; see, also, Mencher v. Weiss, 306 N. Y. 1, 8-9.)
The contention that arbitration provides an adequate remedy is also untenable. Irreparable harm would be a fait accompli before arbitration could be consummated and awards rendered. Furthermore, there is nothing to arbitrate. The “ no-reprisal ” agreement is clear and unambiguous, as hereinafter noted, and *791 defendants have cléarly violated it. In any event this is not a matter of defense. Had defendants desired to raise that question, they could have obtained a stay of the action pursuant to section 1451 of the Civil Practice Act. (Pfeiffer v. Berke, 4 Misc 2d 918; Matter of River Brand Rice Mills v. Latrobe Brewing Co., 305 N. Y. 36; American Reserve Ins. Co. v. China Ins. Co., 297 N. Y. 322.) Finally, an examination of the collective bargaining agreement discloses that the arbitration provisions are permissive rather than mandatory. (Art. XXVII; Admin. Decision of General Counsel N. L. R. B. Case No. 857, par. 13,000, Dec. 5,1953, Labor Law Reporter, Transfer Binder, N. L. R. B. Decisions 1953-1954.)
The defendants’ contentions (1) that plaintiff is not the real party in interest, (2) that plaintiff failed to comply with section 13 of the General Associations Law, and (3) that the venue of this action is improper, which are the basis of their 6th, 7th and 8th alleged separate defenses, áre also specious and untenable. This suit is by plaintiff in its own behalf and not on behalf of any Union member. Plaintiff is a party to the settlement and ‘' no-reprisal ’ ’ agreements wherein the Union arid its members agreed to refrain from reprisals or disciplinary action. It is the breach of that agreement which is causing irreparable harm to plaintiff and which necessitates an injunction to prevent the continuance thereof. To urge plaintiff is not the real party in interest is therefore absurd. Omissions in the summons as to county of residence are not jurisdictional and any objection thereto is waived by defendants ’ appearing generally by their answer. This suit is against Justin Ostrow individually and as president'of' the Union. Since plaintiff is a foreign corporation, venue is determined by the residence of defendants. Suit cannot be brought against the Union alone — it must be brought against the president or treasurer in their representative capacity. Residence for venue purpose is determined by the residence of the president or treasurer as such. (New York Elec. Contrs. Assn. v. Local Union No. 3, 176 Misc. 991.) If Queens County was not the proper courity, under’ section 186 of the Civil Practice Act, and rule 146 of the Rules of Civil Practice, defendants had the right to demand a change of venue and give notice thereof. Having failed to give such notice of such demand they have waived that right. (Hoffman v. Hoffman, 153 App. Div. 191, 193.)
This court is of the opinion that a trial upon charges arising from conduct engaged in during the strike at Republic, in and of itself constituted an act of reprisal under the circumstances *792 disclosed by the evidence in this case. The trial and determination would be a clear violation of the letter and spirit of the “no-reprisal” agreement. From all the evidence here, there can be no doubt, and this court finds, that the defendants violated the expressed terms of that agreement, when they processed and pressed charges against some 561 nonstrikers for conduct unbecoming a Union member for crossing the Union’s picket lines during the strike at Republic, and notifying them of said charges and to appear for trial thereon before the Union’s trial committee at a time and place stated in the notices. This, indubitably was reprisal and disciplinary action by the defendants against nonstrikers which flagrantly breached the agreement, and unless restrained, will nullify the preconceived and publicized salutary protective purposes it was intended to accomplish for all nonstrikers who had crossed picket lines and worked for Republic during the strike. To say this it a violation of a naked legal right is to indulge in pure fantasy.
The evidence further shows that prior to the issuance of said notices, representatives of Republic upon learning of the defendants’ intentions, engaged in several futile discussions with representatives of the Union, in attempting to dissuade them from violating the ‘ ‘ no-reprisal ’ ’ agreement, and in the course of those discussions, the Union’s president stated that the Union had on file charges against over 2,000 nonstrikers who had crossed the picket lines during the strike and he intended to press such charges to trial.
Defendants’ naked denial that plaintiff has performed the terms and conditions of the strike settlement and ‘ ‘ no-reprisal ’ ’ agreements, without alleging specifically and with particularity the terms and conditions not performed raises no issue. (Rules Civ. Prac., rule 92; Lourie v. Mishkin, 279 App. Div. 754; Timber Structures v. Terra-Rube Constr. Corp., 145 N. Y. S. 2d 599, 601-602; Chesapeake Ind. v. Selznick Releasing Organisation, 148 N. Y. S. 2d 736, affd. 2 A D 2d 666.) Defendants are therefore precluded from making such a claim or adducing proof in support thereof. However, in this connection, it must be noted that defendants offered no proof to support such claim, whereas the evidence discloses, and this court finds, that plaintiff has fully complied with all the provisions of said agreements.
Defendants contend that the “no-reprisal” agreement is ambiguous because they did not intend it to prohibit them from charging and trying nonstrikers for conduct unbecoming a Union member for crossing the Union’s picket lines during *793 the strike at Republic. During the trial this court refused to permit the defendants to introduce any parol evidence or writings antedating said agreement to show this undisclosed intent.
This court holds that there is nothing doubtful or uncertain or ambiguous in the language of the ‘ ‘ no-reprisal ’ ’ agreement. Words are to be construed in their grammatical and ordinary sense, unless that would lead to some manifest absurdity or to some inconsistency, or would defeat the purpose of the agreement. The law presumes that the parties understood the import of their contract and that it expresses their intention. In the absence of ambiguity and uncertainty, the parties will not be permitted to prove that they intended something different from that which is clearly and plainly expressed in the agreement. This agreement is clear, unequivocal and complete in itself, and a court cannot by implication, add to or change the contract. The intention of the parties is to be gathered from the language used in making the contract, read in the light of the circumstances surrounding them at the time. Where by their words, as here, the parties have left no reasonable ground for doubt, there is no defensible excuse for interpretation or construction. (Rosenthal v. American Bonding Co., 207 N. Y. 162; Gans v. Ætna Life Ins. Co., 214 N. Y. 326.)
Defendants’ contention therefore must be rejected as contrary to the “ objective theory of contracts ” which is a keystone of our law. Disclosed intent, not some undisclosed subjective intent or understanding, controls contractual relationships. This proposition was well expressed by the Court of Appeals, citing numerous authorities in Porter v. Commercial Cas. Ins. Co. (292 N. Y. 176, 183-184) and in Mencher v. Weiss (306 N. Y. 1, 7).
Furthermore, with the knowledge defendants had from the publicized announcement by Republic that it would insist upon a ‘ ‘ no-reprisal ’ ’ provision in the strike settlement and all the circumstances at the time the “no-reprisal” agreement was made, if they had mental reservations, and failed to disclose to plaintiff that they did not intend said agreement to bar the trials of nonstrikers, then defendants cannot be said to have been acting in good faith, and after accepting and continuing to claim the benefits of said agreement, certainly are in no equitable position to urge that they did not intend the agreement to bar them from holding such trials, and equity will hold them to the specific performance of their solemn obligation as clearly and unambiguously expressed in said “no-reprisal” contract. (Svenska Taendsticks Fabrik Aktiebolaget v. Bank *794 ers Trust Co., 268 N. Y. 73, supra; Petcheff v. Christo Petcheff, S. A., 129 N. Y. S. 2d 677, supra; Mencher v. Weiss, 306 N. Y. 1, supra.)
The evidence shows that plaintiff’s security department personnel, after the aforesaid notices of trial were served upon said nonstrikers, received complaints from strikers against nonstrikers and vice versa,, of being harassed, threatened, called obscene names, and of personal injury and property damage, discord and dissension and failure of strikers and non-strikers to cooperate in the performance of the work at Republic, which they reported and recorded in the regular course of, their duties. Over defendants’ objection personnel of said security department were permitted to testify to receiving the aforesaid complaints and making the written reports thereof and the nature of such reports. These reports were received in evidence, over defendants’ objection, as plaintiff’s Exhibits 11-A, 11-B and 11-C, not as proof of the truth of said complaints, i.e., that incidents of threats, name-calling, etc. did in fact occur, but were received in evidence for the purpose of showing that the complaints were made and that there existed impaired morale, anxiety, fear, insecurity, ill-feeling and animosity between striking and nonstriking employees; (See Johnson v. Lutz, 253 N. Y. 124, 128.) In this court’s opinion, the making of complaints and the nature thereof, serving as circumstantial proof of the employees’ mental attitudes, animosity, fear and apprehension are relevant. If the court is to pass upon whether or not the proposed Union trials would aggravate and cause further and continued discord and impairment of morale, it is necessary for the court to be fully cognizant of the cleavage and ill-feeling that existed between strikers and nonstrikers. So long as the reports are not received for the purpose of establishing the truth of the complaints, the hearsay rule is inapplicable, as the authorities amply indicate. (Mottla on Proof of Cases in New York, § 143; Richardson on Evidence [8th ed.], § 209; 6 Wigmore on Evidence [3d ed.], § 1766; 31 C. J. S., Evidence, § 239; Duncan v. 1502 Brooh Ave. Realty Corp., 2 A D 2d 677; Kershaw v. Steurer, 138 App. Div. 211; Loetsch v. New Yorh City Omnibus Corp., 291 N. Y. 308; see, also, 6 Wigmore on Evidence [3d ed.], §§ 1789, 1790.) In brief, testimony as to the complaints and their nature is not hearsay when offered to show the state of mind or, emotion of the employees who complained to security department personnel, and not to prove the truth thereof.
For the reasons hereinabove stated the court refused to permit any evidence which sought to interpret the *795 " no-reprisal ” agreement on the ground said agreement was clear and unambiguous and required no extraneous evidence and it clearly expressed the complete agreement and intent of the parties thereto.
Reference by defendants’ counsel in his argument for the dismissal of the complaint after the defendant had rested, that only two supervisors of plaintiff’s security department testified as to complaints glosses over the fact that during the trial after said supervisors had testified, it was stipulated, that to save time plaintiff would not call the 11 other supervisors whose testimony of the complaints they received and reported were of similar nature as that testified to by said two supervisors and would only be cumulative, and that it was conceded that if called, they would so testify, but without conceding the truth of the complaints so testified to.
The strike was settled on June 9, 1956, and the evidence discloses that following the termination of the strike, friction and ill-feeling between strikers and nonstrikers persisted ; numerous incidents of violence, threats, name-calling, harassment, ridicule and other antagonistic conduct took place between the two factions. Republic found it necessary to discharge or suspend workers because of said misconduct. Various employees w'ere unable to perform their duties efficiently. Supervisory personnel were obliged to take time from their usual tasks in order to discuss complaints of said misconduct, to halt arguments, to direct employees who refused to cooperate in their accustomed manner with their fellow workers and to patrol areas of the plants where altercations or other misconduct between strikers and nonstrikers occurred. An atmosphere of tension, friction and lack of cooperation replaced the spirit of harmony and cooperation which existed prior to the strike and the morale of the employees was, in consequence deeply affected. All this had an adverse effect upon Republic’s overall efficiency. However, as time passed this ill-feeling between strikers and nonstrikers and the interference with Republic’s operations diminished and conditions were nigh nearing normalcy.
The evidence further discloses, that following the two weeks’ annual vacation when Republic’s plants reopened, commencing on August 22, 1956, 80 nonstrikers were served with said notices of charges and trial, and about August 27, 1956, at least 481 additional nonstrikers had also received similar notices. As above indicated, the bitterness and ill-feeling between strikers and nonstrikers had greatly diminished prior to August 22, 1956, and employee morale and efficiency were *796 well on the way to normalcy. From the evidence adduced in this trial the court finds that by giving said notices the defendants caused a resurgence, of the hostilities that had existed during the strike and after the strike was settled, but which had greatly diminished prior to the giving of said notices, as aforesaid. After the notices of trial were served, dissension, discord, friction, bitterness and ill-feeling were caused to flare up anew, with resulting acts of attrition and lack of cooperation, all of which this court finds affected the morale and efficiency of both strikers and nonstrikers and disrupted work schedules and productivity, to the irreparable harm of Republic. The defendants, it appears, did nothing to appease and allay these conditions, or make any effort to cement the cleavage between the two factions.
After they had received and continued to demand the benefits of the “no-reprisal” agreement, the defendants deliberately violated its expressed provisions by serving said notices of trial. The evidence discloses, that after the strike was settled and before the service of said notices, of trial, the Union’s official publication contained an article by its president, in which he stated that Republic was according preferential treatment to “ scabs who broke our picket lines ” and that Republic was “ doing everything possible to discourage and dishearten and disgust members of this organization”; he further stated that labor-management relations at Republic were worse than prior to the strike and then commented: “ You cannot build airplanes with bitterness and resentment” and also “We want to build more airplanes and good aircraft * * * but we also know that if the bitterness and resentment and tactics of the company are not corrected, it is only human nature and common knowledge that the quantity and quality of aircraft produced at Republic will not be what it should be ”. In the opinion of this court these statements support the claim of injury and impairment of productivity at Republic which is urged by the plaintiff.
The intent and purpose of the “no-reprisal” agreement when adopted and availed of by the parties was to end disputes, not to continue them, and to let by-gones be by-gones. The contract certainly was not intended to be meaningless. Both parties to this contract must be treated upon an equal basis. Republic, whose operations required trained and skilled labor for the performance of the important work it was to perform for the Government, was deeply concerned in maintaining peace and avoiding strife in its plants and labor relations. It therefore, had a vital interest in providing for a “no-reprisal ” *797 provision in the settlement of the strike in order that by-gones be by-gones and all disputes, ill-feeling and disruption of its work schedule and productivity be ended. The very purpose for which the “no-reprisal” provision was entered into was that of avoiding strife among the employees in its plants and restoring harmony, peace, cooperation and efficient productivity in its plants as well as maintaining the good will and services of its trained and skilled workers who were so vitally necessary to Republic in the execution of its important contracts with the Government, and the threatened loss of whose services by reason of continued strife and dissension would seriously affect its production.
Before this court will grant an injunction, it must clearly appear, that some act has been done, or is threatened, which will produce irreparable injury to the party seeking it. (Foster v. White, 248 App. Div. 451, affd. 273 N. Y. 596; Kane v. Walsh, 295 N. Y. 198.) An injury is irreparable when it cannot be adequately compensated in damages, or there is no certain pecuniary standard for the measurement of damages. (Miller’s Inc. v. Journeymen Tailors Union Local No. 195, 128 N. J. Eq. 162, revd. on other grounds 312 U. S. 658.)
Where the remedy at law for the injury complained of is full, adequate and complete, an injunction, as a general rule, will not be granted. “As the court is not in the exercise of its ordinary jurisdiction, but is interfering to supply the deficiency of legal remedies, it interferes only where there is immediate pressing necessity for the prevention of injury, incapable of adequate compensation in damages at law, or such as from its continuance or permanent mischief must occasion a constantly recurring grievance which cannot be otherwise prevented but by an injunction ”. (43 C. J. S., Injunctions, p. 451.) It has been held that in order to warrant the denial of an injunction because of the existence of a remedy at law, such remedy must be plain, adequate and complete, and must be as practicable and efficient as is the equitable remedy. (43 C. J. S., Injunctions, p 451.)
An injured party need not wait until his rights have been destroyed in the circumstances disclosed by the evidence in this case; and, if by reasonable expectation defendants’ unlawful acts may produce such a result, equity will intervene. (Runcie v. Bankers Trust Co., 11 N. Y. S. 2d 924, 928; see, also, Oltarsh v. Oltarsh, 181 Misc. 255.)
In the light of common experience, and as the court here finds the evidence clearly established, it was indubitable that the notices of trial served on the nonstrikers, seriously affected *798 employee morale, impairing efficiency, cooperation, harmony and peace, with resulting impairment of productivity. As the Union president so aptly stated, “ You cannot build airplanes with bitterness and resentment ’ ’ and ' ‘ it is only human nature and common knowledge that the quantity and quality of aircraft produced at Republic will not be what it should be ”. It is undisputed that 80 nonstrikers had received notices of trial on August 22,1956 and that 481 more received theirs on August 27, 1956, and that the defendants intend to bring some' 2,000 more nonstrikers to trial for crossing the picket lines during the strike. There can be no doubt that these overt acts on the part of the defendants had a deleterious impact on employee morale, causing apprehension, fear, unrest, nerve-racking-uncertainty, aggravation and ill-feeling, and a spirit of. insecurity, all of which affected efficiency and productivity in Republic’s plants. Turmoil, loss of work hours and the disruption of work schedules were the result of the resurgence of ill-feeling, resentment, dissension, discord and lack of cooperation that followed in the wake of the defendants’ aforesaid breach of the “no-reprisal” agreement, to the irreparable damage sustained by Republic, and which it will continue to sustain Unless the defendants are restrained from further violating said agreement.
To be realistic, it cannot be said that the plaintiff’s operations will not be seriously disrupted and the morale of its employees impaired to plaintiff’s substantial and irreparable injury, if the defendants are permitted to take disciplinary action and bring to trial over 2,000 of plaintiff’s said nonstriking employees. Greater injury will be inflicted upon the plaintiff by the denial of the relief it seeks than will be inflicted upon the defendants by the granting thereof. In good conscience, this court cannot countenance such injustice, and at the same time permit the defendants to retain the benefits they have derived and which they continue to claim, under the terms of the very agreement they have breached. This court holds that the Union is lawfully bound by said agreement and must abide by the terms thereof, and the only way it can do so, and adequately and completely give plaintiff the remedy to which it is entitled, is to grant the injunction plaintiff prays for herein.
The resulting- damage to Republic caused by the incidents hereinabove referred to, and the damage that will continue if the defendants are permitted to further violate the “no-reprisal ’ ’ agreement, cannot be measured in dollars and cents and are incapable of ascertainment. But the evidence clearly *799 shows, and this court finds, that the damage is irreparable and immeasurably great, and that in such circumstances, plaintiff cannot obtain an adequate remedy at law, and that plaintiff can only have a plain, adequate and complete remedy in equity, by an injunction.
The alleged eight separate and distinct defenses contained in the defendants’ amended answer are hereby all dismissed for the reasons hereinabove stated with respect to each of said defenses. At the close of the plaintiff’s case and after the defendants had rested, the court reserved decision on motions then made by defendant to dismiss the complaint. The court now, in all respects, denies defendants’ said motions.
Upon all the evidence in this case the court determines and finds:
(1) there is no labor dispute involved in this action;
(2) by bringing this action, plaintiff has not engaged in any unfair labor practice;
(3) this court has jurisdiction over the subject matter of this action;
(4) the “ no-reprisal ” agreement upon which plaintiff relies is clear and unambiguous and requires no extrinsic evidence for the interpretation or construction thereof;
(5) said agreement is valid and binding;
(6) defendants by attempting to try said nonstrikers on charges of conduct unbecoming a Union member for crossing the Union’s picket lines during the strike at Republic engaged in acts of reprisal and disciplinary action against employees for acts or conduct engaged in during the strike, and thereby violated the expressed terms of the “ no-reprisal ” agreement;
(7) by reason of said breach of said agreement, plaintiff has sustained irreparable damage, and if defendants are not restrained plaintiff will continue to suffer further irreparable damage, which is incapable of ascertainment;
(8) greater injury will be inflicted upon the plaintiff by the denial of the relief here sought, than will be inflicted upon the defendants by the granting thereof;
(9) plaintiff has fully complied with all the terms of the strike settlement and “ no-reprisal ” agreement, and defendants have had and continue to claim all the benefits provided in said agreements;
(10) plaintiff has no adequate remedy at law.
Upon all the evidence in this case, plaintiff’s motion at the close of the entire case, upon which this court reserved decision, for judgment as prayed for in the complaint, hereby is in all respects granted,
*800 Accordingly, judgment is hereby granted in favor of the plaintiff and against all the defendants, and each of them, in all respects, as prayed for in the complaint.
Submit order and judgment.
This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.