FOLEY CONSTRUCTION COMPANY, Plaintiff, v. TRUCK DRIVERS, CHAUFFEURS AND HELPERS LOCAL NO. 100, etc., et, Defendants.

Common Pleas Court, Hamilton County.

No. A-171258. Decided November 14, 1960.

*Mr. Robert P. Goldman* and *Mr. David W. Goldman*, of *Paxton & Seasongood*, for plaintiff.

*Messrs. Brown & Gettler* and *Mr. Jonas B. Katz*, for defendants.

For further history see *Omnibus Index* in bound volume.

Leis, J.   The plaintiff, Foley Construction Company, filed its petition on July 15, 1959, in the Court of Common Pleas, Hamilton County, State of Ohio, joining as defendants "Truck Drivers, Chauffeurs and Helpers Local Union No. 100 of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 217 West 12th Street, Cincinnati, Ohio," hereinafter designated as "*Local 100*," the individual officers, trustees and business representatives of Local 100, "International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 2070 East 22nd Street, Cleveland, Ohio," hereinafter designated as "*International*" and "Ohio Conference of Teamsters of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 233 South High Street, Columbus, Ohio," hereinafter designated as "*Ohio Conference.*"

This organizational set-up can be charted as follows:

"INTERNATIONAL"   A voluntary and unincorporated International Labor Organization of Individuals or Local Unions it charters.   Local 100 is chartered by International.

"OHIO CONFERENCE" A division of International. Has geographical jurisdiction over local 100.

"LOCAL 100" A local union chartered by International.

A contract effective May 4, 1959, was negotiated by the following parties:

| OHIO CONTRACTORS ASSOCIATION | HEAVY AND HIGHWAY CONSTRUCTION NEGOTIATING COMMITTEE. |
|---|---|
| and | |
| LABOR RELATIONS DIVISION | OHIO CONFERENCE |
| Foley is a member. | Local 100 is a member. |

The plaintiff's petition filed July 15, 1959, alleges that the defendants "are acting with all other members . . . . in picketing, conspiring, and prosecuting efforts, plans, schemes and designs to interfere with the plaintiff and its regularly hired employees and conspiring to force plaintiff to breach its agreement with the Ohio Conference . . . . and with the Department of Highways of the State of Ohio and other persons, firms, corporations, and public authorities with which it has contracts . . . . that defendants . . . . are participating, compelling and encouraging, and have knowingly permitted or failed to prevent, the execution or the attempted execution of unlawful acts of duress, threats, or intimidations . . . ." The petition then in detail sets forth the ultimate facts of the plaintiff's reason for seeking a temporary restraining order and a final order of this court.

The plaintiff further in its petition asked the court for a temporary restraining order pending a final order and determination of the issues in the case . . . . to restrain the defendants from picketing or in any manner interfering with the plaintiff's jobs or personnel in performance of the plaintiff's work.

Judge Louis J. Schneider of the Common Pleas Court, Hamilton County, State of Ohio, on July 15, 1959, issued the following Temporary Restraining Order:

"Let a temporary restraining order issue as prayed for in the petition herein conditioned on plaintiff giving bond with surety satisfactory to the Clerk of Courts in the sum of $500.00. Defendants may be heard at any time on a motion for dissolution."

The defendant Local 100 then filed a charge with the National Labor Relations Board, which board issued a complaint against the plaintiff on November 25, 1959. On November 19, 1959, the defendant Local 100 filed a motion in Common Pleas Court asking the Court to increase injunction bond. This motion was granted. On November 27, 1959, the defendant Local 100 filed the following motion:

"MOTION TO DISSOLVE RESTRAINING ORDER
AND DISMISS PETITION"

"Now comes the defendants and move the Court for an order dissolving the restraining order heretobefore issued on July 15, 1959 and dismissing the above cause for the reason that the COURT DOES NOT HAVE JURISDICTION OVER THE SUBJECT MATTER OF THIS ACTION." (Emphasis added.)

The above motion is the matter presently before this Court. In substance, does this Court have jurisdiction over the subject matter of this action? The jurisdiction of the Common Pleas Courts embraces all matters in law and in equity that are not denied to it. As a court of general jurisdiction the Common Pleas Court may determine its own jurisdiction, and this Court "has general equity jurisdiction to pass upon the issues as though it had been granted original jurisdiction over the cause." (*General Electric Co.* v. *Union,* 93 Ohio App., 139, at p. 149.) In order that the Court may determine its jurisdiction it must inquire into the allegations of facts of the case to determine if such state of facts exist to encompass the Court with jurisdiction to render a final decision in the matter before it. The Court in this type of cause also has to determine whether or not its jurisdiction has been pre-empted by an Act of Congress which under the original National Labor Relations Act (the Wagner Act) and the Labor Management Relations Act, 1947 (Taft-Hartley) gave exclusive jurisdiction in some labor matters to the National Labor Relations Board.

From the pleadings, oral arguments and written briefs submitted by counsel, the court summarizes the facts as follows:

The plaintiff's petition alleges that it is a party to a collective bargaining agreement effective May 4, 1959, covering wages, hours and conditions of employment of all truck drivers, employees of Local 100 who are employed by the plaintiff. This agreement was negotiated with the Ohio Conference and Plaintiff alleges that the contract is binding upon Local 100 under the contract doctrine of ratification and estoppel. The plaintiff furthermore states that for some years previous to the current contract, negotiations took place regularly between the same parties who negotiated the agreement of May 4, 1959, and that these negotiations and agreements occurred continuously since 1955. The plaintiff charges in its petition that the defendants are attempting through picketing to force it to breach its contract, and further alleges instances of violence, intimidation and threats of bodily harm.

The defendant states that Local 100 is the duly designated representative of the plaintiff's employees (who are truck drivers) and the other party necessary to complete a valid contract with the plaintiff. The defendant states that plaintiff's refusal to bargain with Local 100 is an unfair labor practice under Section 8 (a) (5) of the Labor Management Relations Act. The defendant argues that matters coming within the purview of the Labor Management Relations Act, 1947 (Taft-Hartley) are within the *exclusive jurisdiction* of the National Labor Relations Board, and that state courts are without jurisdiction over such matters.

The plaintiff, on the other hand, argues that the Supreme Court of the United States recognized two exceptions to the matters of exclusive jurisdiction assigned by Congress to the National Labor Relations Board, namely:

1. In cases of Violence, and
2. In the case of Breach of Contract.

Many decisions have been rendered by the Supreme Court of the United States as well as lower courts, both federal and state relative to the jurisdiction of the National Labor Relations Board. The Court has legal power to grant an injunction if the facts and evidence so dictate, but does this Court have the juris-

diction to do so. Or has Congress, through the Taft-Hartley Act pre-empted this field, and divested this Court of the power to grant an injunction.

 As the learned Judge William K. Thomas of Cuyahoga County Common Pleas Court so aptly stated in *Standard Oil Co.* v. *Oil, Chemical and Atomic Workers, International*, 76 Ohio Law Abs., 266 at page 269, "In the unending task of integrating the activities of our National Government with those of our State Governments, so necessary if our Union is to be preserved and to endure, no more troublesome problems have confronted the Courts of our country than the problems of the type that now face this Court. In the post Taft-Hartley era, ten years this year (1957) many decisions on this very question (of jurisdiction) have been handed down by the Supreme Court of the United States, and by a lot of Courts at the bottom of the pyramid, just like this Court, and by many Courts in between."

An analysis of the laws passed by Congress and cases decided by the Courts relative to this issue herein is in order. When Congress enacted the original National Labor Relations Act it exercised the full extent of its jurisdiction over interstate commerce. Section 10 (a) of that Act vested exclusive jurisdiction over matters covered by the Act in the National Labor Relations Board, providing:

"*Section 10 (a)*.

"The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in Section 8) affecting commerce. *This power shall be exclusive*, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, or otherwise."

The original Act (Wagner Act) was amended in 1947 with the Labor Management Relations Act, 1947 (Taft-Hartley Act). The coverage of the Act over interstate commerce was not reduced, but Section 10(A) of the Act was amended authorizing the national Board to cede jurisdiction over local matters to state boards, unless the locate statute was "inconsistent with the corresponding provision of this Act or has received a construction inconsistent therewith."

Under the Taft-Hartley Act, which included unfair labor

practice by Unions as well as unfair labor practices by employers as originally provided in the Wagner Act, the Labor Board adopted certain "jurisdictional standards." If the particular matter brought before the Board did not meet its jurisdictional standards, the Board would not "assert" its jurisdiction to act.

A leading case on the question of *State* v. *Labor Board* jurisdiction is the case of *Garner* v. *Teamsters Union,* 346 U. S., 485 (1953). In this case "the United States Supreme Court extended its doctrine of pre-emption to court injunction against picketing by Unions. The Supreme Court upheld a decision of Pennsylvania's highest court which vacated a lower court injunction against picketing by a minority union, the purpose of which allegedly was to force the employer to compel his employees to join that union. The Court stated in that decision that ". . . . the reasons for excluding state administrative bodies from assuming control of matters expressly placed within the competence of the Federal Board also exclude state courts from like action." (Problems of Federal-State Jurisdiction in Labor Management Disputes, by Joseph DiFede, in a speech before the 11th Annual Conference for Labor, New York University—May 1958.)

In the case of *Weber* v. *Anheuser-Busch,* 348 U. S., 468 (1954), the employer argued that relief was granted not for any reason having to do with labor relations, but under a state law of general application dealing with restraints of trade. The United States Supreme Court rejected the argument and held that "where the facts reasonably bring the controversy within the section (of the Taft-Hartley Act) prohibiting these practices, and where the conduct, if not prohibited by the Federal Act, may be reasonably deemed to come within the protection afforded by the Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance."

By these decisions the United States Supreme Court held that Federal Jurisdiction was supreme, and the State must yield. Yet unanswered was the question of state jurisdiction where the board might have jurisdiction but refused to assert its jurisdiction in accordance with its jurisdictional standards

referred to above. The United States Supreme Court in three decisions held that even though the Labor Board refused to assert its jurisdiction over a subject matter embraced within the Act, the States still have no jurisdiction. Thus a "No man's Land" was created where one might claim a wrong but be without a forum for a remedy. (See *Guss* v. *Utah Labor Board*, 353 U. S., 1; *Amalgamated Meat Cutters* v. *Fairlawn Meats*, 353 U. S., 20; *San Diego Building Trades* v. *Garmone*, 359 U. S., 236.)

By the Landrum-Griffin Act of 1959 (signed by the President September 14, 1959) amending the Taft-Hartley Act, Congress attempted to remedy the "No Man's Land" situation which had been created by the United States Supreme Court decision in *Guss* v. *Utah Board, supra,* by adopting Section 14 (c) (2) providing:

"(2) Nothing in this Act shall be deemed to prevent or bar any agency or the courts of any State or Territory . . . . from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to Par. (1) of this subsection, to assert jurisdiction."

The Labor Board, after the above section was passed, adopted Rule Section 102.98 for issuing advisory opinions on whether or not it will assert jurisdiction over a particular case.

It is apparent from a reading of Rule Section 102.98 that the Board will issue advisory opinions under this rule only on the jurisdictional questions (based on the Board's Standards which the Board adopted under the Taft-Hartley Act as referred to above), and not regarding the subject matter of the dispute. Therefore, the question of what subject matters fall within the jurisdiction of the Board and which are within the jurisdiction of the state remains open. As stated by the United States Supreme Court in the *Garner* v. *Teamsters case, supra,* at page 488:

"The National Labor Relations Act, as we have before pointed out, leaves much to the states, though Congress has refrained from telling us how much. We must spell out from conflicting indications of Congressional will the area in which state action is still permissible."

In *United Construction Workers* v. *Laburnum Corp.,* 347

U. S., 656, the United States Supreme Court held that the states had jurisdiction over a tort action for damages even though the union guilty of the tort might also have committed an unfair labor practice under the Act. Also see: *Automobile Workers* v. *Russell*, 356 U. S., 634 and *International Association of Machinists* v. *Gonzales*, 356 U. S., 617. However, in *San Diego Building Trades* v. *Garmone, supra,* previously before the court (353 U. S., 26), but remanded to the state court on the question of damages which were involved in the case as well as injunctive relief, the Court held the state court lacked jurisdiction.

A few months before the San Diego case (supra) was decided by the United States Supreme Court, the Supreme Court of Minnesota in the case of *McLean Distributing Company* v. *Brewery and Beverage Drivers, Warehousemen and Helpers Union, Local No. 993,* 94 N. W. (2d), 514, Syl. 2, on January 23, 1959, held "that courts of this state are not precluded from exercising jurisdiction over a controversy involving the legality of a strike in contravention of an express no-strike clause in a labor contract even though the contract involves employment affecting interstate commerce, if the contract contains no provision for re-opening or re-negotiations during the express term thereof." This case is important because the United States Supreme Court denied petition of certiorari on June 22, 1959 (*Brewers and Beverage Drivers, Warehousemen and Helpers Union Local 993* v. *McLean Distributing Co.*, 360 U. S., 917).

This denial occurred after the *San Diego Building Trades Council* v. *Garmone, supra,* which was decided by the United States Supreme Court on April 20, 1959. (See also *McCarroll* v. *Los Angeles County District Council of Carpenters,* 315 P (2d), 322, where United States Supreme Court also denied certiorari, 355 U. S., 932.) The Supreme Court of the United States by its denial of certiorari indicates agreement with the decision of the state courts in the cases cited above.

The defendant argues that the question herein does not relate to a breach of contract directly, but that "the contract in question is an integral part, or the result of, a violation by the employer of Section 8 of the Act," and such violation constitutes an unfair labor practice. Therefore, continues the defendant, "the question of the validity or the invalidity of the

contract in question is 'arguably' subject to Section 7 or Section 8 of the Act. It is, therefore, within the exclusive jurisdiction of the Board and beyond the power of this court (Court of Common Pleas, Hamilton County, Ohio), to adjudicate. *San Diego Building Trades Council v. Garmone, supra.''* The defendant concludes by saying ''it is clear that when a contract is subject to being declared invalid by the National Labor Relations Board, this Court does not have jurisdiction to give effect to the contract unless and until the National Board finds that it has been executed in conformance with the requirement of Federal Law.''

The plaintiff contends that it did not commit an unfair labor practice. In the Garmone case the Court said at page 244 of 359 U. S.:

''When it is clear or may fairly be assumed that the activities which a state purports to regulate are protected by Section 7 of the National Labor Relations Act or constitute an unfair labor practice under Section 8, due regard for the federal enactment requires that state jurisdiction must yield.''

This statement indicates that only activities which are protected by Section 7 of the National Labor Relations Act or constitute an unfair labor practice under Section 8, are the activities in which state jurisdiction must yield. The plaintiff contends that a strike in breach of contract was not activity protected by Section 7 of NLRA. (*National Labor Relations Board v. Sands Mfg.*, 306 U. S., 332 (1939), reaffirmed by the United States Supreme Court in *United Steel Workers of America v. Warrior and Gulf Navigation Co.*, decided June 20, 1960, 40 CCH Labor Cases, para. 66629.)

The plaintiff included in its brief a History with Reference to Elimination of Provision that Breach of Contract was an Unfair Labor Practice in Enacting the Labor Management Relations Act of 1947, otherwise known as the Taft-Hartley Act.

''The Senate Amendment contained a provision which does not appear in Section 8 of existing law. This provision would have made it an unfair labor practice to violate the terms of a collective bargaining agreement or an agreement to submit a labor dispute to arbitration. The conference agreement omits

this provision of the Senate Amendment. *Once parties have made a collective bargaining contract the enforcement of that contract should be left to the usual process of the law and not to the National Labor Relations Board.* Vol. I Legislative History of the Labor Management Relations Act of 1947, P. 545 and 546." (Emphasis added.)

The above statement was also included in the Court's opinion in *Standard Oil Co.* v. *Union,* 76 Ohio Law Abs., 266 at p. 275; *McLean Distributing Co.* v. *Brewery and Beverage Drivers, etc.,* 94 N. W. (2d), 514, at P. 521, certiorari denied, 360 U. S., 917.

In the case of *McCarroll* v. *Los Angeles County District Council of Carpenters, supra,* certiorari denied, 355 U. S., 932, this court accepted the same argument as advanced by the plaintiff herein, at p. 326:

"Conduct that constitutes a breach of a collective bargaining agreement is not for that reason alone an unfair labor practice. Proposals to make breach of contract an unfair labor practice were before Congress when it enacted the Taft-Hartley Law, but were specifically rejected by the conference committee on the ground that once the parties had entered into a collective bargaining agreement, enforcement should be left to the usual processes of the law and not to the National Labor Relations Board."

This Court concurs with this principle. It was not the intent of the Congress to give the National Labor Relations Board, which is an administrative agency, the jurisdiction over matters of law, such as the enforcement of contracts, nor is exclusive jurisdiction vested in the federal courts in this respect. See Sec. 301 (Section 185, title 29 U. S. code); also see discussion on jurisdiction, *General Electric Co.* v. *Union,* 93 Oh App., 139, pages 148 to 156, inclusive.

In *Standard Oil Co.* v. *Union, supra,* at page 275, Judge Thomas said, "So it seems to me that there is clearly nothing in the Taft-Hartley Act which can be regarded as protecting concerted activities which have as their purpose possible and probable inducement of breach of contract. This conduct here (the court refers to the conduct of one union's attempts to induce a breach of a collective bargaining agreement between

the company and another union), neither being prohibited by the Taft-Hartley Act nor protected by the Taft-Hartley Act, therefore does not fall within any of the categories in which the Supreme Court has said a State Court may not act. It has been ruled by the Supreme Court that even though a specific remedy exists under Taft-Hartley Act to prevent violent picketing, nevertheless State Courts are not divested of their historic right to maintain the public peace. Surely, it must be equally true that where the Taft-Hartley Act provides no remedy against picketing which tends to induce a breach of contract, the State Courts also retain their historic role to uphold and enforce valid existing contracts." Judge Thomas also cited *General Electric Co.* v. *Union, supra.* The Ohio Courts held in both these decisions that the Court had jurisdiction to act.

The defendant takes the position that the contract entered into between Foley and the Ohio Conference does not bind Local 100. The defendant also argues that Local 100 is the authorized bargaining agent for the teamster employees of Foley, and consequently the element of an unfair labor practice arises under Section 8 (a) (5) by Foley's refusal to bargain with Local 100, and instead negotiated agreements with the Ohio Conference. The defendant further submits a complaint issued by NLRB against Foley, and argued in its letter to this Court of July 12, 1960, that "since the NLRB has issued a complaint charging the plaintiff with such an unfair labor practice, the validity of the contract is 'arguably subject to Section 8 of the Act and cites as authority *San Diego Building Trades* v. *Garmone, supra.'*" The defendant bases his argument on a footnote in the United States Supreme Court's decision in *Association of Westinghouse Salaried Employees* v. *Westinghouse Electric Corp.*, 348 U. S., 437, which states that "certain procedural safeguards are placed about the bargaining agreement: an obligation to confer in good faith on questions arising under it, a duty to follow certain steps prior to terminating or modifying the agreement unilaterally . . . ." The defendant asserts that one of the "procedural safeguards" referred to above is that Foley had a duty to bargain with the representatives selected by a majority of its employees. The defendant said Foley violated this duty and therefore "the validity of an agree-

344

ment allegedly in violation of Taft-Hartley is in the first instance within the exclusive jurisdiction of the National Labor Relations Board." At least, says the defendant it is "arguably" subject to Section 7 or Section 8 of the Act and therefore is governed by the case of *San Diego Building Trades Council* v. *Garmone, supra.*

The plaintiff in its petition alleges that a collective bargaining contract of May 4, 1959, which covers wages, hours, and other conditions of employment of all truck driver employees who are members of Local 100 and employed by the plaintiff, is binding upon Foley and the defendants. The petition further alleges prior negotiations of the same type between the plaintiff and Ohio Conference dating back to 1955, the benefits of which contracts were accepted by Local 100. The petition also alleges that "said Local 100 has never negotiated any agreements with plaintiff with respect to heavy and highway construction work and it is not authorized to do so." It is a general rule in pleading that in a motion to dismiss, as on demurrer, all the allegations of plaintiff's petition must be taken as true. (See 31 Ohio Jurisprudence, Pleading; Section 269 Treating Motion as Demurrer.) In order for a court to properly rule on a motion, there must be facts before it to serve as a basis to render a decision. If allegations are not denied by an answer the inference is, for the purpose of this motion, that they are true. The Court then views the facts alleged as true, but only for the purpose of its ruling on the motion to dismiss.

The defendant, therefore, admits that there is a contract dated May 4, 1959, between Foley and the Ohio Conference covering the employees of Foley who are members of Local 100, and further that there have been other contracts in the past of similar nature and scope, and the defendant further admits that it has never negotiated any agreements with the plaintiff with respect to heavy and highway construction work but that the Ohio Conference negotiated such agreements for the entire State of Ohio, and for the various locals in Ohio, including Local 100. The defendant further admits that the contract of May 4, 1959, contains a no-strike or work stoppage provision.

As indicated in this very lengthy opinion, the matter of

jurisdiction of the state courts over the subject matter involved herein, has been the subject of many court decisions, but the basic fact still remains that the original National Labor Relations Act and the amending Taft-Hartley Act, and subsequent amendments, have left the enforcement of the contract between Foley and the defendants herein to the ordinary process of the courts, and this court has jurisdiction to hear the cause on its merits. This Court points out, however, that the question of its jurisdiction over the subject matter can be raised again at any time, during the trial on its merits, or at its completion, before the decision of the Court.

The Court in its opinion has not considered the matter of alleged violence other than by making passing reference to its obligation to restrain such violence (*Standard Oil Co. v. Union*, 76 Ohio Law Abs., 266, at page 275) and of its jurisdiction to do so.

The Court wishes to thank all counsel for their very well prepared briefs and diligent research of the issues in this case. The Court has spent many hours reading and deliberating the matter before it, and expresses its appreciation to counsel for their patience in awaiting the Court's decision and opinion. The Court is sorry to have written such a lengthy opinion but thought it well, and to the advantage of all counsel, to have done so.

Motion to dismiss is overruled. Please present an entry accordingly.