[No. 36152. Department Two. November 9, 1961.]

ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC., SEATTLE-NORTHWEST CHAPTER, *Respondent,* v. DONALD R. TROUT *et al., Appellants.*\*

\*Reported in 366 P. (2d) 16.

*Youngberg & Sorrel* and *Orly J. Sorrel*, for appellants.

*Ferguson & Burdell, Donald McL. Davidson,* and *Raymond E. Brown,* for respondent.

HUNTER, J.—This is an appeal from a restraining order which specifically enforces a collective bargaining agreement. The plaintiff (respondent), Associated General Contractors of America, Inc., Seattle-Northwest Chapter, will be referred to as the AGC. The defendants (appellants) now remaining in this action are: Western Washington District Council International Hod Carriers, Building and Common Laborers; Local 242 of International Hod Carriers, Building and Common Laborers of America, AFL-CIO; and certain labor officials. They will be referred to as the union.

In all labor relations, the AGC acts in behalf of its members and the union acts in behalf of its members. The collective bargaining agreement between the AGC and the union contained a provision for arbitration, and the agreement was in full force and effect at the time the dispute in this case arose.

The facts are as follows: A member of the AGC held a prime contract for the construction of certain buildings. The plastering was sublet to plaster contractors. During the early part of the job, the entire crew of the plaster hod carriers reported for work at 7:30 a.m., 30 minutes before regular starting time, in order to make preparations so the plasterers could start at regular working time, for which the hod carriers were paid double time. The plaster contractors changed this procedure by requesting only a part of the crew to report at 7:30 a.m. and the remainder of the crew to report at 8 a.m. The union thereupon notified the plaster contractors that the entire crew should be requested to report for work at 7:30. The employers did not comply and the entire plaster hod carrier crew refused to report for work. Oral negotiations followed between the AGC and the union for about three weeks, but they were unsuccessful. About two weeks after the hod carriers had stopped their work, the plasterers, who are not members of the Local, began performing the tasks normally performed by the plaster hod carriers, whereupon the plaster hod carriers peacefully picketed the job with "sandwich" signs stating "Plaster Contractors Unfair to Plaster Hod Carriers." Shortly thereafter, work on the job ceased. The AGC, thereupon, brought this action alleging the union was violating its collective bargaining agreement, and sought injunctive relief and an order requiring the parties to follow the arbitration procedure set forth in the labor agreement. The union answered denying its members had violated the collective bargaining agreement, and asserted that as a labor dispute existed between the parties, the action should be dismissed.

After a hearing upon the issue raised by the pleadings, the trial court entered an order, the application of which did not cover the international union, directing (1) that the members of the union bound by the labor agreement be temporarily restrained from picketing any construction site or work performed by members of the AGC; (2) that the parties arbitrate or follow the labor agreement procedures

to resolve any disputes between them; (3) that the AGC shall cause employers on the plaster job to obtain their former employees from the local union, but the employers shall be at liberty to hire employees elsewhere if the local union fails to provide them; (4) that the AGC cause to be deposited weekly in the registry of the court one-half hour of appropriate wages for any plaster hod carrier who voluntarily reports he is available for work at 7:30 a.m., without being requested to do so by his employer; that such fund be returned to the AGC or to the person depositing the same in the event it is finally determined that such plaster hod carriers who elected to report at 7:30 a.m., although not requested to do so by their employers, are not entitled to be paid for the period from 7:30 a.m. to 8 a.m.; otherwise, to be remitted to such plaster hod carriers for whom it was deposited, subject to lawful deductions; and (5) that the restraining order is not intended to compel any member of the local union to work for or refrain from working for any employer, or to work or refrain from working at any hour.

The defendant union appeals.

The union contends that the peaceful picketing by the local union was not in violation of the labor agreement, for the reason that there was no provision in the agreement prohibiting picketing.

█ We are aware that picketing is not prohibited in the agreement in express language, but it is clear from the record that because of the picketing there was a cessation of work on the job or a work stoppage prior to the exhaustion of arbitration in the manner provided by the agreement. Section 31 of the agreement provides:

"In cases of violation, misunderstanding or difference in interpretations of this Agreement, there shall be no cessation or stoppage of work until all means of arbitration as listed herein shall have been exhausted."

The union's contention that the picketing did not violate the agreement is, therefore, without merit.

█ The union argues, however, that a labor dispute existed and the right to picket peacefully is a valuable right

of labor organizations which cannot, under such circumstances, be denied in the absence of fraud or violence. We are cognizant of the well-established rule of this court that where responsible collective bargaining is the ultimate object, peaceful picketing to obtain that object will not be interfered with when there exists a "labor dispute" as defined by our legislature in RCW 49.32.110(1). *Northgate Motors, Inc. v. Automobile Drivers & Demonstrators Union, Local 882,* 48 Wn. (2d) 356, 293 P. (2d) 762 (1956); *Ostroff v. Laundry & Dye Works Drivers' Local No. 566,* 39 Wn. (2d) 693, 237 P. (2d) 784 (1951). However, the rule does not apply where, in such a case as this, the parties have entered into a collective bargaining agreement whereby the union has bargained away its right to picket and cause a work stoppage in consideration of the parties submitting their disputes to a board of arbitration. The order restraining picketing, in the instant case, was a proper enforcement of the agreement.

The union further argues that the AGC was in violation of the agreement in failing to request the entire plaster hod carrier crew to report for work at 7:30 a.m. and was, therefore, precluded from obtaining equitable relief under the maxim that one who seeks equity must come into court with "clean hands."

An examination of the agreement discloses that the issue of early starting time raised in the instant case is not included in any provision of the agreement. However, the agreement does provide the procedure to be followed by the parties under such a contingency. Section 34 provides:

"If situations arise which are not specifically mentioned herein, or if modifications of any clause becomes imperative, the same shall be handled by the above mentioned arbitration board. Any decision or recommendation emanating therefrom shall be attached to and become a part of this Agreement."

In view of this section, it is clear that until the arbitration board makes its determination on the question of early starting time, there is no agreement on that particular matter which either party can breach. Therefore, at

the time this dispute arose, the AGC did not violate the collective bargaining agreement by reason of its refusal to request the entire plaster hod carrier crew to report for work at 7:30 a.m. The "unclean hands" doctrine is not applicable.

The union next contends the trial court erred in directing the parties to arbitrate since negotiations had not yet been completed as provided under the agreement. This contention is without merit. The court expressly provided in its order that "The parties are directed *to arbitrate or follow said contract procedures to resolve any disputes between them . . .*" (Italics ours.) As the contract procedures call for negotiation prior to arbitration, the court did not deny the parties the right to negotiate if they so desired.

The union argues the trial court, by its order, failed to preserve the *status quo*. We disagree. The order of the trial court was eminently fair. We believe an examination of the order discloses that the rights of all parties were adequately protected during the pendency of the negotiations or arbitration procedure.

The AGC, at the conclusion of its brief, has moved this court to dismiss the union's appeal because the arbitration award was entered on September 8, 1961, as disclosed by the supplemental transcript.

The arbitration award was not before the trial court when this appeal was taken and is not properly a part of the record for review before this court. Counsel admit the injunction in the instant case is still in effect. Therefore, the motion for dismissal on the ground that the case is moot is denied.

The judgment of the trial court is affirmed, and the case is remanded for further proceedings as may be necessary in the premises.

The AGC will be allowed its costs on this appeal.

FINLEY, C. J., MALLERY, DONWORTH, and OTT, JJ., concur.

December 18, 1961. Petition for rehearing denied.