160 So.2d 150 (1964)
RADIO CORPORATION OF AMERICA, Appellant,
v.
LOCAL 780, INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF the UNITED STATES and CANADA, AFL-CIO, by and through Jonathan Reynolds, its business agent and representative, and Local 666, International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, AFL-CIO, by and through Arthur W. Beeman, its business agent and representative, Appellees.
No. 4566.
District Court of Appeal of Florida. Second District.
January 17, 1964.
Rehearing Denied February 11, 1964.
*151 Fowler, White, Gillen, Humkey & Trenam, Tampa, Crofton, Brewer & Holland, Titusville, for appellant.
Blackwell, Walker & Gray, Miami, Bernard M. Mamet, Chicago, Ill., for appellees.
KANNER, Judge.
Upon motion of the plaintiff-appellant, Radio Corporation of America, the Circuit Court of Brevard County entered without notice a temporary restraining order[1] against defendants-appellees, Local 780, International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, AFL-CIO, by and through Jonathan Reynolds, its business agent and representative; and Local 666, International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, AFL-CIO, by and through Arthur W. Beeman, its business agent and representative. Pursuant to motion subsequently made by appellees, the circuit judge dissolved the temporary restraining order; the matter is before this court on interlocutory appeal from the order of dissolution. Based upon appellant's petition for review of an order denying supersedeas, this court reinstated the temporary restraining order with modifications,[2] pending outcome of this appeal.
*152 The question raised here is one of jurisdiction, the chancellor having specified as basis for his order of dissolution "* * * that the subject matter of the controversy is subject to the National Labor Relations Act, as amended, and that in accordance with the decisions of the United States Supreme Court and the Supreme Court of this state the matter is federally pre-empted and that the sole forum authorized to grant relief, if any, is warranted, is the National Labor Relations Board * * *".
Our view is at variance with that of the chancellor; from our study, we have concluded that jurisdiction does lodge in the state court.
No answer was filed nor testimony or controverting evidence offered at the hearing on the motion to dissolve; therefore, our factual review as it concerns the jurisdictional problem necessarily falls within the confines of the verified complaint.
Essentially, the complaint alleges that R.C.A. is engaged at Patrick Air Force Base and Cape Canaveral[3] in the photographing of missile tests performed by the United States Government and in the processing and handling of films thus made; that the work which it performs is of such critical importance to the missile test program at the Cape that the nation's defense effort would be delayed and, because of this, United States Air Force and defense department officials have stated that, unless performance is immediately secured, this may result in cancellation of R.C.A.'s contracts.
It is then alleged that through collective bargaining negotiations with each of the defendant unions there exists a contract containing the following provision:
"Section 2.2. Agreement against strikes and lockouts.
"(a) The parties mutually agree that there shall be no strike, work stoppage, slowdown, sitdown or picketing by the union or its representatives, or members or lockout on the part of the company, unless and until all steps of the grievance procedure, including arbitration, all have been employed and one of the parties hereto fails or refuses to comply promptly with any final decision made against such party thereunder."
It further appears from the complaint that in its operations R.C.A. employs, among others, a group of photographers, a group of processors, and a group of camera repairmen; that the film processors group is represented by Local 780, of the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, AFL-CIO, which also represents the unit of camera repairmen, and that the photographers unit is represented by Local 666 of the same national union; that R.C.A. and Local 780, as representatives of the film processors, entered into a contract with respect to the employees of that group on August 10, 1962, set to expire October 5, 1964; that R.C.A. and Local 666 as representatives of the photographers, entered into a contract as to that unit of employees, this contract to expire also on October 5, 1964; that both contracts contain the same no-strike clause hitherto quoted and that both are in full force and effect.
*153 There are also allegations setting out that on December 18, 1961, Local 780, as representative of the camera repairmen's unit, entered into a contract with R.C.A. and that this contract expired on September 30, 1963; that attempts to negotiate a new contract have thus far failed; that on October 29, 1963, Local 780 caused the group of employees under that expired contract to strike against R.C.A.; that in furtherance of its strike Local 780 has caused members and employees of R.C.A. to picket the entrances to its facilities at the Cape and Patrick Air Force Base; that the picketing has induced R.C.A.'s employees at those two places whose contracts are still in effect to strike in violation of the "no strike" clause; that employees of R.C.A. who are members of Locals 780 and 666 and whose contracts containing the "no strike" clause are still operative are violating those contracts by striking and refusing to work; and that the damage and injury which R.C.A. suffers and will suffer, absent the relief sought, is of such a nature that the amount of it will be difficult if not impossible to ascertain legally and that neither Local 780 nor Local 666 is financially able to respond in an action at law for damages. Certain other allegations in the complaint relate to picketing of International Brotherhood of Electrical Workers, AFL-CIO, members employed by R.C.A. at Merritt Island, but the request for relief as to those employees was abandoned. The restraining order is now sought to apply only to the employees under the contracts in force with Locals 780 and 666, respectively, which are scheduled to expire October 5, 1964.
It thus appears that R.C.A. seeks to enforce the no-strike, no-picketing pledge of two collective bargaining agreements, premising its right to injunctive relief upon breach of them by and through appellees.
The labor unions maintain with respect to jurisdictional residence of the cause that, by certain cases, the authority of the state to issue injunctions in labor matters of this type has been pre-empted by federal law under which the National Labor Relations Board has been accorded exclusive jurisdiction of such matters. Perhaps the most heavily relied upon cases advanced by them are those of Re Green, 1962, 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198; Ex parte George, 1962, 371 U.S. 72, 83 S.Ct. 178, 9 L.Ed.2d 133; General Drivers, Warehousemen, and Helpers, Local Union No. 89 v. American Tobacco Co., Inc., 1955, 348 U.S. 978, 75 S.Ct. 569, 99 L.Ed. 762; Bogle v. Jakes Foundry Co., 1960, 362 U.S. 401, 80 S.Ct. 812, 4 L.Ed.2d 864; McCrary v. Aladdin Radio Industries, Inc., 1957, 355 U.S. 8, 78 S.Ct. 12, 2 L.Ed.2d 22; and Teamsters, Chauffeurs, Helpers & Taxi Cab Drivers, Local Union No. 327 v. Kerrigan Iron Works, Inc., 1957, 353 U.S. 968, 77 S.Ct. 1055, 1 L.Ed.2d 1133.
Re Green, decided May 21, 1962, involved an attorney representing a labor union, who had been held in contempt by an Ohio state court without a hearing which could have given him an opportunity to establish that the court had no power to issue the injunction because acting in a field exclusively reserved by Congress for the National Labor Relations Board. The contempt charged was that of advising the union to continue picketing in violation of an ex parte injunction. In habeas corpus proceedings in the state courts the attorney challenged their jurisdiction to penalize him for the conduct cited and was denied relief. On certiorari, the Supreme Court of the United States reversed the judgment below, holding that due process was violated by the conviction without a proper hearing. The respondent had argued that in the dispute between the employer and the union there was not concerned any attempt to organize workers nor any refusal of the employer to bargain, but only the enforcement of a no-strike clause in a collective bargaining agreement, which was left by Congress either to the federal courts or to the state courts. The petitioner attorney urged that the unfair labor practice charge filed with the National Labor Relations Board was based on the employer's refusal to bargain *154 in good faith and that the collective bargaining agreement which the employer sought to have the state court enforce had been signed by unauthorized agents. The Supreme Court of the United States, in the course of its opinion, commented that it was impossible to determine from the record whether or not the dispute was exclusively within the jurisdiction of the National Labor Relations Board and, further, that the Ohio court could not know whether it was within bounds when, without a hearing, it cited a person for contempt for violating the injunction.
As to the November 13, 1962, Ex parte George case, the situation factually was one where the American Oil Company was involved in a labor dispute with the National Maritime Union, which peacefully picketed a refinery operated by a subsidiary of American Oil Company. The subsidiary had a valid collective bargaining agreement with another union. A Texas court granted to the subsidiary a temporary injunction against picketing at the refinery, finding that the object of the National Maritime Union's picketing was to secure the disregard, breach or violation of the collective bargaining agreement by the refinery workers and their union in violation of a Texas law. A port agent of the National Maritime Union, despite the injunction, picketed the refinery and was held in contempt. Upon habeas corpus proceeding, the Texas Supreme Court held that the contempt order was not void, ruling that the port agent's conduct was neither arguably prohibited nor arguably protected by the National Labor Relations Act. On certiorari, the Supreme Court of the United States vacated the judgment of the Texas Supreme Court and stated that the district court was without jurisdiction if the port agent's picketing was arguably prohibited or arguably protected by the National Labor Relations Act. The court held, in the light of the Texas court's finding that American Oil Company wholly owned the subsidiary and directed and controlled all of its activities, that even assuming without deciding that the picketing would not fall within the preclusions of certain sections of the National Labor Relations Act, the port agent's picketing constituted conduct at least arguably protected by section 7 of the Act. As may be ascertained from the above narrative and from a reading of the case, there was no contract between the injunctively restrained Maritime Union and American Oil Company or its subsidiary. Thus, the enforcement of a collective bargaining contract was not at issue.
The other cases mentioned above as having been relied upon by appellees are per curiam reversals by the Supreme Court of the United States of state courts' decisions, except that in the Aladdin case the judgment was vacated and the case remanded. A perusal of the factual data set out by these state decisions[4] reveals that certain features are common to all. In each, the complainant was seeking to compel other companies, common carriers, and their employees to resume customary service despite picketing at the complaining employer's plant. In none did the complaining party rely upon a collective bargaining agreement nor any no-strike or no-picketing pledge between itself and its employees or any union on their behalf, but those against whom the injunctive relief was sought and procured had no contractual relations at all with the complaining employer. In the General Drivers, Kerrigan, and Aladdin cases, the carriers' employees were claiming to be exempt from performing their customary services by virtue of the provision in their respective contracts with the carriers *155 to the effect that it shall not be a violation of such contract or a cause for discharge for the employees to refuse to handle "unfair goods". In the Jakes Foundry case, the court simply characterized the essentials as exactly similar to the Aladdin case, which there controlled. The Supreme Court of the United States rendered each of the four opinions per curiam without comment, citing cases which, again, do not relate to violation and enforcement of collective bargaining agreements. Thus, in these four cases, the conduct protested had to do with failure of the common carriers or their employees to render "customary service", which the Tennessee and Kentucky courts said was required as a public duty both under common and statutory law. As stated, that which must be decided here is solely the question of jurisdictional power of a state court to enforce collective bargaining agreements; that which is complained of is breach of a no-strike, no-picketing provision of the employees' contract with their employer via the respective local unions.
In opposition to the views of appellees, the appellant, R.C.A., urges that, under recent opinions, the Supreme Court of the United States has indicated consistently that jurisdiction of state courts over suits involving violation of collective bargaining agreements is not divested.
Section 301(a) of the Labor Management Relations Act, 1947, interpreted through certain United States Supreme Court decisions, relates to suits for violation of contracts between an employer and a labor organization. This section provides as follows:
"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 61 Stat. 156, 29 U.S.C. § 185(a).
In Dowd Box Co. v. Courtney, decided February 19, 1962, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483, 487, the sole question was whether the above quoted subsection operated to divest a state court of jurisdiction over a suit for violation of a contract between an employer and a labor organization. The answer of the Supreme Court of the United States was that section 301(a) was not intended to deprive a party to a collective bargaining contract of the right to seek redress for its violation in an appropriate state tribunal. Affirming the judgment before it, the court expressed agreement with the Supreme Judicial Court of Massachusetts that the courts of that Commonwealth had jurisdiction in the case, quoting from the Massachusetts decision:
"`We do not accept the contention that State courts are without jurisdiction. The statute does not so declare. The conferring of jurisdiction in actions at law upon the appropriate District Courts of the United States is not, in and of itself, a deprivation of an existing jurisdiction both at law and in equity in State courts. The case principally relied upon by the defendant, Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972, does not so state. In the absence of a clear holding by the Supreme Court of the United States that Federal jurisdiction has been made exclusive, we shall not make what would be tantamount to an abdication of the hitherto undoubted jurisdiction of our own courts.'" (Emphasis supplied.)
The Supreme Court of the United States, turning subsequently to the question of congressional intent, pointed out that Congress had rejected the proposal that violations of collective bargaining agreements be made unfair labor practices, deliberately choosing *156 instead to leave the enforcement of such agreements "to the usual processes of the law."
The case of Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 268, 9 L.Ed.2d 246, 249, decided by the Supreme Court of the United States on December 10, 1962, involved an employee who, individually and as assignee of other employees, brought a suit for damages against the employer for alleged breach of a collective bargaining contract, although the alleged conduct of the employer was an unfair labor practice within the jurisdiction of the National Labor Relations Board. Both the trial court and the Michigan Supreme Court were of the view that the state court lacked jurisdiction, premised upon the ground that the National Labor Relations Board had exclusive jurisdiction of the subject matter. After decisions had been rendered in certain other cases, including Dowd Box Co. v. Courtney, supra, the Supreme Court of the United States granted certiorari. As to jurisdiction of courts in suits arising under section 301 and the pre-emption doctrine, the court, reversing and remanding, said:
"The trial court sustained respondent's motion to dismiss for want of jurisdiction on the ground that the allegations, if true, would make out an unfair labor practice under the National Labor [Management] Relations Act and hence the subject matter was within the exclusive jurisdiction of the National Labor Relations Board. The Michigan Supreme Court affirmed, 362 Mich. 350, 106 N.W.2d 785, relying upon San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, and like pre-emption cases. Certiorari was granted, 369 U.S. 827, 82 S.Ct. 843, 7 L.Ed.2d 793, after the decisions of this Court in Local 174, Teamsters, etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593, and Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483.
"Lucas Flour and Dowd Box, as well as the later Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462, were suits upon collective bargaining contracts brought or held to arise under § 301 of the Labor Management Relations Act and in these cases the jurisdiction of the courts was sustained although it was seriously urged that the conduct involved was arguably protected or prohibited by the National Labor [Management] Relations Act and therefore within the exclusive jurisdiction of the National Labor Relations Board. In Lucas Flour as well as in Atkinson the Court expressly refused to apply the pre-emption doctrine of the Garmon case; and we likewise reject that doctrine here where the alleged conduct of the employer, not only arguably, but concededly, is an unfair labor practice within the jurisdiction of the National Labor Relations Board. The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301. If, as respondent strongly urges, there are situations in which serious problems will arise from both the courts and the Board having jurisdiction over acts which amount to an unfair labor practice, we shall face those cases when they arise. This is not one of them, in our view, and the National Labor Relations Board is in accord." (Footnotes omitted.)
It is to be observed that the Smith v. Evening News and the Dowd cases just discussed, along with those of Lucas Flour and Atkinson to which the Supreme Court of the United States made reference in the Smith case, were actions upon breach of collective bargaining contracts. The Garmon case (San Diego Bldg. Trades Council v. Garmon, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775), enunciating the pre-emption *157 doctrine, has as a distinguishing factual characteristic an absence of any breached collective bargaining contract.
A New York court was confronted with the jurisdictional problem in the May 1, 1963, case of Perry v. Robilotto, 39 Misc.2d 147, 240 N.Y.S.2d 331 (Sup.Ct.), a case in marked parallel to the instant one. The cause was before the court on application to obtain a stay to prevent a strike, pending a hearing on an order for a temporary injunction against a local union. The court concluded that the state court has jurisdiction to enjoin, as a breach of contract, a strike which is in violation of a no-strike clause in a collective bargaining dispute, holding that the strike was not a "labor dispute" within the New York Civil Practice Act.
In the California case of A.I. Gage Plumbing Supply Company, Inc. v. Local 300 of the International Hod Carriers, Building and Common Laborers Union of America, 1962, 202 Cal. App.2d 197, 20 Cal. Rptr. 860, 92 A.L.R.2d 1223, an action for injunctive relief by a contractor against a union for breach of contract arising from a strike in violation of a collective bargaining no-strike agreement, the court of that state said:
"Defendant appeals primarily on the grounds that the trial court had no jurisdiction to try the action in that the union's conduct amounted to an `unfair labor practice' over which jurisdiction is preempted by the federal government in the Labor Management Relations Act of 1947 and must be rectified, if at all, by the National Labor Relations Board and not by a state tribunal. Plaintiff urges that the suit is essentially one for an injunction and for damages arising from a breach of contract, even though such conduct might also directly or incidentally be an unfair labor practice.
"The distinction between the two theories of suit is fundamental. If the suit is to enjoin and collect damages from an unfair labor practice absent any collective bargaining contract, it has been decided by the United States Supreme Court that the federal government has preempted this area of labor relations and in the absence of an overwhelming state interest such as violent picketing (Allen-Bradley Local v. Wisconsin Employment Relations Board, 315 U.S. 740, 749, 62 S.Ct. 820, 86 L.Ed. 1154; United Construction Workers v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025), the sole jurisdiction lies with the National Labor Relations Board (San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775). This pre-emption occurs even though the National Labor Relations Board has refused to hear the controversy as happened in the instant case.
"On the other hand, if there is a collective bargaining agreement in effect between the parties, and an action is brought for an injunction, damages, or arbitration of the dispute arising out of the contract the federal courts and the state courts are proper tribunals for redress. (Charles Dowd Box Co., Inc. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483; McCarroll v. Los Angeles County, etc. Carpenters, 49 Cal.2d 45, 315 P.2d 322.)
"A breach of a collective bargaining contract is not in itself an unfair labor practice. The National Labor Relations Board has no jurisdiction to try the case nor has it the power to give damages for breach of contract. (Grunwald-Marx, Inc. v. Los Angeles Joint Board, 52 Cal.2d 568, 581, 343 P.2d 23.)"
Yet another state court, that of Pennsylvania, said in Philadelphia Marine Trade Ass'n v. Int'l Longshoreman's Ass'n, 1955, 382 Pa. 326, 115 A.2d 733, 736, cert. denied, 350 U.S. 843, 76 S.Ct. 84, 100 L.Ed. 751, a *158 case which concerned violation of a collective bargaining agreement:
"Defendants present several questions for determination, one of which challenges the jurisdiction of the court below on the ground that plaintiffs' complaints are cognizable only in a Federal and not a State court. This contention is specifically answered by the decision of this court in General Building Contractors' Association v. Local Union No. 542, 370 Pa. 73, 87 A.2d 250, 32 A.L.R.2d 822, cited with approval in Garner v. Teamsters, Chauffeurs and Helpers, Local Union No. 776, 373 Pa. 19, 25, 94 A.2d 893, 897. In that case we upheld the granting of an injunction which enjoined the violation of a collective bargaining agreement by a labor union. It was there argued that Congress, by enactment of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq., had taken from the State courts the jurisdiction to issue such an injunction, but we held that neither that Act nor any other Federal legislation deprived the State courts of their inherent equity powers for the enforcement of contracts."
Numerous other state courts have sustained their right, jurisdictionally, to utilize injunction against a strike and picketing for breach of a collective bargaining agreement.[5]
Interesting is the case of Tidewater Express Lines v. Freight Drivers, etc., 1963, 230 Md. 450, 187 A.2d 685, 688. There, the Court of Appeals of Maryland, commenting that there seemed to be no room for any finding other than that the Maryland Legislature had taken away the power of the court to issue the injunction there sought, observed that the other state courts which have permitted injunctions for breach of an existing labor agreement generally are either in states having no anti-injunction statute, such as California and Ohio, or where, as in Minnesota and Pennsylvania, there is express statutory exemption of breaches of collective bargaining agreements from the coverage of anti-injunction statutes. Although New York, for example, has an anti-injunction statute, the Maryland court characterized it as less restrictive than that of Maryland. In Florida, there is no such anti-injunction statute.
Both the appellant and the appellees, in connection with their respective positions, cite the 1962 case of United Steel Workers of America, AFL-CIO, Local 6140 v. Nubar Tool & Engineering Co., Inc., Fla. App., 148 So.2d 45, 49, cert. denied 153 So.2d 306, decided by this court. That case was not concerned with violation of any no-strike, no-picketing provision of a collective bargaining contract, although the *159 court in its opinion made the collateral observation that:
"Equally clear is the provision that activities engaged in by unions and/or employers arising out of a labor dispute may be regulated by the states if such activities are neither protected nor prohibited under sections 7 and 8 of the N.L.R.A., supra. See International Union, U.A.W., A.F. of L., Local 232 v. Wisconsin Emp. Rel. Bd., supra."
Insofar as Florida is concerned, there is no interdiction, either by statute or through any decision of our Supreme Court which curtails jurisdictional power of the state court to entertain a proceeding such as this; nor, as to the subject matter here involved, does any act of Congress which may be restrictive as to federal court jurisdiction express such a limitation upon jurisdiction of a state court. Absent a congressional or state enactment or a judicial pronouncement by the United States Supreme Court or the Florida Supreme Court to the contrary, jurisdiction of the state court is not divested. From our study and research, the precise question presently before this court has not been adjudicated by the Supreme Court of the United States. We do not find as persuasive the particular decisions of that tribunal urged by the appellees. Rather, other United States Supreme Court cases which we have cited, along with decisions emanating from various states, leave us persuaded that jurisdiction of Florida courts under circumstances such as these is not pre-empted.
The chancellor's order of dissolution is reversed, with direction that the temporary restraining order here involved be modified to conform to this court's alterations of it as previously set out in footnote 2 of this opinion, so that it shall apply only to the two existing contracts which we have specified. We should point out that such an order enjoining appellees from striking and picketing carries no import that any person is required to continue as an employee or to return to work; but all remain possessed of the prerogative to discontinue their employment at will.
Reversed and remanded.
SMITH, C.J., and SHANNON, J., concur.
NOTES
[1] "CONSIDERED, ORDERED, ADJUDGED AND DECREED, that pending further order of the court herein:

"1. The Defendants, Local 780, International Alliance of Theatrical Stage Employees, and Moving Picture Machine Operators of the United States and Canada, AFL-CIO; Local 666, International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, AFL-CIO; Jonathan Reynolds; Arthur W. Beeman and all of the agents, servants, officers and members of the foregoing organizations and each of them, be and they are hereby restrained and enjoined and ordered to refrain from:
"a. Calling, causing, inducing by picketing or otherwise, or in any other way participating in any strike, work stoppage, slowdown, sitdown or picketing, at any of the plaintiff's facilities located at Cape Canaveral, Florida.
"b. Calling, causing, inducing or in any way participating in any strike, work stoppage, slowdown, or picketing at the plaintiff's facilities located at Patrick Air Force Base, Florida, except with respect to employees who are members of the bargaining unit with respect to which RCA Service Company, a division of Radio Corporation of America, and International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada (AFL-CIO) and its Local 780, entered into a collective bargaining agreement on December 18, 1961, covering photographic laboratory employees, which contract expired midnight, September 30, 1963.
"c. Calling, causing, inducing or in any participating in any strike, work stoppage, slowdown, sitdown, or picketing at the plaintiff's facilities or at any place where the plaintiff has employees working at the Merritt Island launch area, Merritt Island, Florida."
[2] "ORDERED and ADJUDGED that the temporary restraining order of the Circuit Court of Brevard County, Florida, in said cause bearing date of October 29, 1963, be and the same is hereby reinstated and continued in force and effect during the pendency of the interlocutory appeal, insofar only as the same pertains to that certain collective bargaining agreement dated August 10, 1962, and work covered under it between Appellant and Local 780, as the bargaining unit and insofar as the same pertains to that certain collective bargaining agreement under date of May 5, 1962, and work covered under it between Appellant and Local 666 as the bargaining unit, except that portion of paragraph `b' beginning with the word `except', together with that portion designated as paragraph `c', and except with respect to employees no longer under either of the mentioned contracts."
[3] Subsequently named Cape Kennedy.
[4] General Drivers, Warehousemen and Helpers, Local Union No. 89 v. American Tobacco Co., Inc., Ky. 1954, 264 S.W.2d 250; Jakes Foundry Co. v. Tennessee-Carolina Transp., Inc., 1959, 46 Tenn. App. 309, 329 S.W.2d 364; Aladdin Radio Industries, Inc. v. Associated Transport, Inc., 1956, 42 Tenn. App. 52, 298 S.W.2d 770; and Kerrigan Iron Works, Inc. v. Cook Truck Lines, Inc., 1956, 41 Tenn. App. 467, 296 S.W.2d 379.
[5] McCarroll v. Los Angeles County District Council of Carpenters, 1957, 49 Cal.2d 45, 315 P.2d 322, cert. denied, 355 U.S. 932, 78 S.Ct. 413, 2 L.Ed.2d 415; McLean Distributing Co. v. Teamsters, Local 993, 1959, 254 Minn. 204, 94 N.W.2d 514, cert. denied, 360 U.S. 917, 79 S.Ct. 1436, 3 L.Ed.2d 1534; McLean Trucking Co. v. Doyle, 1959, 17 Misc.2d 478, 184 N.Y.S.2d 114; affirmed, 8 A.D.2d 789, 188 N.Y.S.2d 943; motion for leave to appeal denied, 9 A.D.2d 677, 193 N.Y.S.2d 223; Anchor Motor Freight v. Local 445, Teamsters, 1958, 12 Misc.2d 757, 171 N.Y.S.2d 506; affirmed, 5 A.D.2d 869, 171 N.Y.S.2d 511; further proceedings reported at 10 A.D.2d 994, 204 N.Y.S.2d 98; 11 A.D.2d 766, 204 N.Y.S.2d 891; Republic Aviation Corp. v. Republic Lodge 1987, 1957, 10 Misc.2d 783, 169 N.Y.S.2d 651 (Sup.Ct.); Bee Line, Inc. v. Local 252, 1956, 157 N.Y.S.2d 232 (Sup.Ct.); General Electric Co. v. Int'l. Union, Etc., 1952, 93 Ohio App. 139, 108 N.E.2d 211; appeal dismissed 158 Ohio St. 555, 110 N.E.2d 424; Masetta v. Nat'l. Bronze & Aluminum Foundry Co., 1952, Ohio App., 107 N.E.2d 243; reversed on other grounds, 159 Ohio St. 306, 112 N.E.2d 15; Foley Const. Co. v. Local 100, 1960, Ohio Com.Pl., 172 N.E.2d 170; General Building Contractors Ass'n v. Local No. 542, 1952, 370 Pa. 73, 87 A.2d 250; Associated General Contractors v. Trout, 1961, 59 Wash.2d 90, 366 P.2d 16; Alabama Cartage Co. v. Int'l. Brotherhood, 1948, 250 Ala. 372, 34 So.2d 576.